UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
                                                    :
MARCIA RAFTER,
                                                    :
                            Plaintiff,                        **MEMORANDUM and ORDER**
                                                    :
            -against-                                         04 Civ. 3341 (JSR)(KNF)
                                                    :
BANK OF AMERICA, FLEET BANK,
CITY OF NEW YORK, CHARLES                            :
GIFFORD, XIOMARA LETO, KIMBERLY
JENKINS, IRVIN NOAK, JANE DOE(S), AND                :
JOHN DOE(S),
                                                    :
                            Defendants.
---------------------------------------------------------------X

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

## INTRODUCTION

This action brought, pursuant to 42 U.S.C. § 1983, by Marcia Rafter ("Rafter"),

proceeding pro se, arises out of her arrest on March 28, 2003.  Before the Court is Rafter's

application for sanctions to be imposed on counsel to the defendants for making false

representations to the Court about their receipt of sealed records pertinent to this action.

According to Rafter, defense counsel's misconduct delayed, unreasonably and unnecessarily, the

pretrial discovery phase of the action.  The defendants oppose the motion.

## BACKGROUND

On March 28, 2003, Rafter was arrested, at the behest of Fleet Bank[1] employees, by

defendant New York City Police Detective Irvin Noak ("Noak"), as she attempted to withdraw

funds from an account she maintained at the bank.  Bank employees represented to the police

---

[1]Fleet Bank was subsequently acquired by Bank of America.

that Rafter was attempting to withdraw funds form an account associated with a social security

number that was not her own.  Criminal charges preferred against Rafter were dismissed, and all

arrest, prosecution-related and criminal court records were ordered sealed, pursuant to New York

Criminal Procedure Law ("CPL"), § 160.50.  That statute provides, in relevant part, as follows:

> Upon the termination of a criminal action or proceeding against a
> person in favor of such person, . . . all official records and papers
> . . . relating to the arrest or prosecution including all duplicates
> and copies thereof, on file with . . . any court, police agency, or
> prosecutor's office shall be sealed and not made available to any
> person or public or private agency[.]  [S]uch records shall be made
> available to the person accused or to such person's designated
> agent.

CPL § 160.50(1)(c),(d).

On May 26 and June 3, 2005, counsel to the defendants aligned with the City of New

York (hereinafter "City defendants") requested that Rafter execute a CPL "§ 160.50 release," so

that the sealed records germane to the underlying criminal action could be obtained and used in

connection with the City defendants' defense.  Counsel to the defendants associated with the

defendant bank (hereinafter "bank defendants") made a similar request of Rafter in June 2005.

Rafter did not comply with these requests.  The Court held a conference with the parties on June

9, 2005.  During the conference, Rafter denied receiving several of the records-release requests

but, advised the Court that she was reluctant to permit the defendants to obtain the sealed

records.  Counsel to the City defendants wrote to the Court on August 22, 2005, advising that on

June 15 and 20, 2005, Rafter was sent CPL § 160.50 releases and did not sign them.  Rafter's

reticence to execute the unsealing authorizations required the Court to convene additional

conferences, with the parties, in September and October 2005 and in January 2006, to address

defense counsel's frustration with Rafter's failure to authorize release of the sealed records.  As

a result of the discussions had during those conferences, on October 18, 2005, January 25 and

April 20, 2006, the Court ordered Rafter to execute the requisite document(s) to enable the

sealed records to be disclosed to the defendants.  To ensure that the sealed records would be

obtained and distributed efficiently, the Court directed Rafter to submit the unsealing

authorization to counsel to the City defendants and directed that attorney to provide all parties a

copy of the records she received, based on the unsealing authorization.

      According to Rafter, the pertinent records were unsealed and disclosed to counsel to the

City defendants by July 2006, but were not provided to her, until May 2007.  Rafter complained

to the Court about this distribution delay.  Rachel Seligman Weiss ("Weiss"), one of the

attorneys representing the City defendants, responded that the action had been stayed, while

several motions were pending before the Court.  However, the Court advised the parties, during a

conference, that pretrial proceedings were never stayed, and, thus, no delay in distributing the

unsealed criminal action records should have occurred.

      On February 28, 2008, during the deposition of Michael Broschart ("Broschart"), a

private investigator engaged by the bank defendants to assist their counsel, the law firm

Congdon, Flaherty, O'Callaghan, Reid, Donlon, Travis & Fishlinger ("CFORDTF"), in

defending against this action, Rafter learned that, in 2005, Noak possessed New York City

Police Department records related to her arrest that had been sealed, pursuant to CPL § 160.50,

and, further, that Noak had furnished a copy of those sealed records to Broschart.  Broschart

testified, at his deposition, that within 7 to 14 days of receiving the arrest-related documents

from Noak, he forwarded a copy to Laura A. Endrizzi ("Endrizzi"), counsel to the bank

defendants.

      These revelations prompted Rafter to question the verisimilitude of representations made

by defense counsel to the Court, in writing and orally during conferences, that Rafter's failure,

from 2004 to 2006, to provide a written authorization permitting release of the sealed records to

defense counsel prevented them from accessing those records and hampered their ability to

conduct discovery fully, on behalf of their respective clients.  Rafter alleged that when Endrizzi

obtained the sealed New York City Police Department records from Broschart, in 2005, she

shared them with Weiss and that these records were used to respond to discovery demands that

Rafter had made upon the defendants.  Defense counsel denied Rafter's allegations.  An

evidentiary hearing was held by the Court to address Rafter's allegations, that counsel to the

defendants misrepresented to the Court when they received and distributed the sealed New York

City Police Department records.

Noak testified at the hearing.  He stated that, after he received a copy of the complaint

Rafter filed to initiate this action, he met with Weiss, at the Office of the New York City

Corporation Counsel, and brought with him what he described as his investigator's file regarding

Rafter.  Noak recalled that he gave Weiss a copy of the contents of his file during their meeting.

At the hearing, Noak compared the contents of his investigator's file to the police department

records Rafter received, after executing the unsealing authorization.  Noak's file contained all

but a few of the unsealed police department records.  According to Noak, he was unaware that

the documents in his file had been sealed.  Noak explained that he is "not privy to when a file or

an arrest has become sealed; I am not notified."  He explained further that, in instances where he

has effected an arrest and, subsequently, arrest-related records are sealed, he has never been

contacted by the New York City Police Department or the district attorney's office or anyone

else in law enforcement concerning the sealing of the records.

Noak also acknowledged meeting with Broschart at the Midtown North police precinct;

4

although, he did not have a keen recollection of the meeting.  Noak stated that, during the meeting, he gave Broschart a copy of the documents in his investigator's file.  He did so because Broschart was "the agent of the victim [of the crime for which Rafter had been arrested, which was,] Fleet Bank" and, Noak believed that, pursuant to law, the victim of a crime is entitled to a copy of the "arrest report and the affidavit."  Noak did not identify the law to which he made reference.

Broschart also testified at the hearing.  He recalled that, on July 14, 2005, he met with Noak at the Midtown North police precinct, and Noak gave him "a copy of the police file" pertinent to Rafter's arrest.  Nothing about the file indicated to Broschart that its contents were sealed.  Broschart testified that sometime after the meeting, he dictated, on an audio cassette, a report of his activities concerning this case for Chubb Insurance Company, which he directed his clerical assistant, Karen Wright ("Wright"), to transcribe.  Broschart stated that Wright was also directed to sign his name to the report and to forward a carbon copy of the report, along with a copy of the documents Broschart received from Noak, to Endrizzi.  According to Broschart, although he delegated to Wright the responsibility for sending his report, and the materials he received from Noak to the insurance company and to Endrizzi, he never ensured that the documents were actually sent.  Broschart stated that no one associated with the bank's counsel ever confirmed for him that his report and Noak's file documents were received.  Broschart also testified that, although Wright is a loyal employee and generally reliable, she has failed previously to comply with a directive that an item be enclosed along with something he asked her to mail on his behalf.  Wright did not appear as a witness at the hearing.

Broschart's hearing testimony differed from testimony he gave while being deposed, by Rafter, in 2008.  At that time, he testified that he received Noak's file documents in late 2005,

5

not July 2005, and that, within one or two weeks thereafter, he, not his clerical assistant, forwarded a copy of those documents to the law firm representing the bank, to the attention of Endrizzi.  Broschart's hearing testimony also differed from statements he provided to the Court, through a September 6, 2007 affidavit.  In that affidavit, Broschart stated that, after he obtained the "police report from the New York City Police Department," he "did not distribute it to anyone other than showing it to an employee of Fleet, which is a party to this action."  In contrast, during the hearing, not only did Broschart testify that the report was sent to an insurance company and to Endrizzi, Broschart also testified that he met with the bank's director of security, Noel Baratto ("Baratto"), and "because of [Baratto's] position with the bank," Broschart decided to give him a copy of the documents he had obtained from Noak.

At his deposition, Broschart also revealed that he displayed one of the documents from Noak's file to the spouse of one of the defendant bank's employees, to convince the employee that she was involved in this case.  That testimony contradicted the statement in Broschart's September 6, 2007 affidavit that he had only shown materials in Noak's file to a bank employee.[2]

Weiss testified at the hearing.  She acknowledged receiving certain sealed New York City Police Department records, from Noak, when they met in 2004.  According to Weiss, that meeting occurred before the City defendants filed their answer to Rafter's complaint.  The docket sheet for this action, maintained by the Clerk of Court, indicates that the City defendants' answer was filed with the court on June 9, 2004.  Weiss was unable to identify all the documents Noak gave her, but she recalled that among the documents she received were the property

---

[2]The Court has taken judicial notice of Broschart's 2007 affidavit and his 2008 deposition testimony.  See Fed. R. Evid. 201.

6

vouchers related to items seized from Rafter when she was arrested and a complaint follow-up form, known as a "DD5."  Weiss stated that the documents Noak gave her were not all the sealed police department documents associated with Rafter's arrest.  For example, she noted that some of the department's electronically stored documents were not in Noak's file.

Weiss explained that the Office of the New York City Corporation Counsel requires that an unsealing authorization be secured from a litigant so that it can obtain criminal court, police department and district attorney office records that are sealed, pursuant to CPL § 160.50, and, thereafter, distribute them to the parties for use during a litigation.  Weiss testified that, in responding initially to Rafter's interrogatories and document requests, she was stymied, because Rafter was demanding that Weiss' clients produce sealed records, but was refusing to provide an unsealing authorization so that the City defendants could obtain the records and produce them to her.  Notwithstanding that impediment, Weiss stated that she responded to Rafter's discovery demands by providing responsive information that was not sealed.

Weiss was asked why she represented to the Court that she could not access the sealed police department records, until Rafter provided an unsealing authorization, when, based on the hearing testimony, she possessed some of those sealed records, as early as 2004.  Weiss stated that, "in hindsight," her use of the word access "was not the best choice of words."  She explained that what she meant when she used the word access "was access and distribution . . . and in hindsight, five years of thinking back, perhaps it wasn't the best choice of words, but it was meant to have a dual meaning of obtaining that which I did not have from the agency itself . . . the court and the district attorney, and . . . it was meant to encompass obtaining all those additional documents, as well as distributing them to the parties in the litigation."

Jessica Cohen ("Cohen"), another attorney representing the City defendants, testified at

7

the hearing.  Cohen recalled that she was assigned to this case in 2007 and believed that, at that time, she saw the documents Noak gave to Weiss in 2004.

Endrizzi testified at the hearing that, when this case came to CFORDTF in 2004, Charles Schnepp ("Schnepp") was the supervising "attorney in charge of the account."  He assigned the case to Endrizzi, and they worked on it together; although, Schnepp's involvement was described by Endrizzi as very tangential.  Endrizzi testified that Robert Krauss ("Krauss"), another CFORDTF attorney, was also involved in the case, but only during January and February 2008.

According to Endrizzi, she first learned that Broschart had obtained a copy of New York City Police Department records regarding Rafter's arrest during Baratto's July 20, 2007 deposition.  Endrizzi recalled that Baratto testified that, in 2006, Broschart had either shown or given him a copy of the file Broschart obtained from Noak.  Endrizzi asked Broschart to provide her with a copy of the documents he received from Noak and later shared with Baratto.  Endrizzi testified that Broschart provided them to her in early September 2007.  Endrizzi stated that, except for certain bank documents that were in her clients' files, the first time she saw Rafter's arrest-related documents was in March or April 2007.

Endrizzi denied Rafter's allegation that Endrizzi received Broschart's report and the contents of Noak's file in July 2005.  Endrizzi stated that she took vacation in July 2005, and, while she was vacationing no other CFORDTF attorney would receive documents for a case assigned to her.  However, she also stated that, while she was unavailable, Krauss had access to the files she maintains for this action.  Endrizzi conceded that she was unable to say whether CFORDTF received Broschart's report along with Noak's file materials, at any time in 2005.  However, after Broschart's February 2008 deposition, she searched the files she maintains for

8

this action, "several times," and did not find a report from Broschart referencing New York City Police Department records.

Endrizzi explained that when CFORDTF receives mail, it is opened by a receptionist. Endrizzi confessed that, after her mail is opened by the receptionist, she does not know "the exact procedure" the receptionist follows with that mail. Although, according to Endrizzi, "at some point in the course of the day [,the opened mail is] delivered to the appropriate parties." Endrizzi testified that, if she is in the office when mail for her is distributed, it is handed to her, otherwise "it would be left somewhere in my office."

Maureen Carrick ("Carrick"), CFORDTF's office manager, also testified at the hearing. She explained the procedures followed when CFORDTF receives mail. Carrick testified that CFORDTF's receptionist opens the mail and, using a Rolodex card that identifies, by initials, to whom each of the law firm's cases is assigned, marks the mail, identifying to whom it should be directed. CFORDTF does not keep a log of the mail it receives. Carrick sorts the mail according to the indications the receptionist places on it and then distributes it to the various attorneys' offices.

According to Carrick, regardless of the addressee the sender lists on an item of mail that is received by the law firm, the data on the firm's Rolodex card governs to whom the receptionist will direct the mail. In a circumstance where the opened mail indicates that a court conference is upcoming, the mail is delivered first to a CFORDTF calendar clerk, who records the scheduled conference on one of the law firm's calendars. Thereafter, the mail is forwarded to the appropriate attorney. Carrick testified that she distributes CFORDTF's mail between 4:30 p.m. and 6:00 p.m., by handing it to the designated attorney, if the attorney is in his or her office. If the attorney is not present, the mail is placed on the attorney's office chair.

9

Carrick inspected the receptionist's Rolodex card for this action.  It indicates that the attorneys who may receive mail for this case are Schnepp and Endrizzi.  However, Carrick observed on the Rolodex card that a line was drawn through Schnepp's initials.  Carrick could not state when the line was placed through Schnepp's initials.  According to Carrick, based on the law firm's mail-distribution procedures, in 2005, mail for the instant action would have gone to Schnepp and not to Endrizzi.  Therefore, Carrick testified, mail received by CFORDTF, in July 2005, for this case, would have gone to Schnepp.  Schnepp was not called as a witness at the hearing.[3]

## DISCUSSION

A court has the inherent power to supervise and control its own proceedings to ensure that cases are disposed of orderly and without unnecessary delay.  See Chambers v. NASCO, Inc., 501 U.S. 32, 43, 111 S. Ct. 2123, 2132 (1991).  Through this power, a court has the discretion to impose sanctions, when necessary, on parties and their counsel who engage in conduct that unduly delays the expeditious disposition of a case.  See Revson v. Cinque & Cinque, P.C., 221 F.3d 71, 78 (2d Cir. 2000).  A court is also authorized, by 28 U.S.C. § 1927, to sanction an attorney whose conduct unreasonably prolongs the disposition of a matter pending before the court.  The statute provides the following:

---

[3]After the hearing concluded, counsel to the bank defendants submitted to the Court an affidavit from Schnepp.  The Court determined not to consider the affidavit because: 1) the parties were not authorized to supplement the hearing record with additional evidence; and 2) it would be unfair to Rafter if the Court were to consider the affidavit, inasmuch as Rafter was not afforded an opportunity to cross-examine Schnepp, and challenge the veracity of his statements.  For the same reason, a post-hearing declaration by Muriel Goode-Trufant, Chief, Special Federal Litigation Division, New York City Law Department, submitted by counsel to the City defendants, has not been considered by the Court.

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927

"The Supreme Court . . . has explained that a formal sanctioning system, established by a statute or rule, does not necessarily displace the courts' inherent power to sanction . . . it is possible for [the] statutory and inherent sources of judicial authority to coexist." Armstrong v. Guccione, 470 F.3d 89, 102 (2d Cir. 2006) (internal quotation marks and citation omitted). Typically, under either § 1927 or the court's inherent power, imposition of a sanction on counsel requires a clear showing of bad faith. See Oliveri v. Thompson, 803 F.2d 1265, 1273 (2d Cir. 1986); DLC Management Corp. v. Town of Hyde Park, 163 F.3d 124, 136 (2d Cir. 1998). Bad faith, in this context, means "the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." Oliveri, 803 F.2d at 1273. However, where the conduct to be sanctioned does not involve actions undertaken by an attorney as part of the attorney's legitimate efforts to advocate zealously for a client, but involve an attorney's failure either negligently or recklessly to discharge the attorney's responsibility as an officer of the court, a sanction may be imposed without a finding of bad faith. Disrupting or delaying proceedings or violating a previously issued court order are examples of the types of sanctionable conduct for which a finding of bad faith is unnecessary. See United States v. Seltzer, 227 F.3d 36, 40-41 (2d Cir. 2000).

Weiss' Conduct

The record establishes that Weiss possessed some of Rafter's sealed police department

11

records in 2004, but could not distribute them to any of the parties to the action until Rafter executed the unsealing authorization.  Rafter failed to execute the necessary unsealing authorization until 2006.  In writing and orally, during conferences held with the Court to address Rafter's refusal to execute an unsealing authorization, Weiss told the Court she could not access the sealed records.  Weiss omitted telling the Court she had acquired some of the sealed records, from Noak, in 2004.  Weiss' explanation, at the hearing, that, when she told the Court she could not "access" the relevant records she meant to communicate that she could not access and distribute them, is incredible.  Access does not have the "dual meaning" – access and distribute – Weiss assigned to it at the hearing.  Access and distribute are very different verbs. Using either verb alone does not describe the same activity – nor convey the same meaning – that using the verbs together, as Weiss now says she intended, would describe.

Weiss' omission and her use of the word "access," when communicating with the Court about the records sealed, pursuant to CPL § 160.50, are very troubling.  However, the evidence adduced at the hearing does not support a finding that Weiss either: 1) acted in bad faith, for the purpose of delaying the litigation, See Oliveri, 803 F.2d at 1273; or 2) multiplied the proceedings unreasonably and vexatiously to delay the action.  See 28 U.S.C. § 1927.  Moreover, the record does not establish that Weiss' conduct disrupted a court proceeding or violated a previously issued court order.  See Seltzer, 227 F.3d at 41-42.  In the circumstance of the instant case, the Court finds that Weiss' conduct does not warrant a sanction, under either the Court's inherent power to supervise and control its own proceedings or the authority vested in it by 28 U.S.C. § 1927.

Cohen's Conduct

The hearing record is barren of any facts establishing that Cohen made any

12

misrepresentations to the Court.  Accordingly, no basis exists for the Court to sanction her.

Endrizzi's Conduct

Rafter's allegation, that Endrizzi obtained sealed police department records in 2005, is based on Broschart's deposition testimony that he sent Endrizzi a copy of Noak's file in July 2005.  Broschart has given inconsistent sworn statements about when he received Noak's file documents and what he did with them.  Moreover, he could not testify definitively, at the hearing, that his clerical assistant, Wright, sent Noak's file documents to Endrizzi, as he claims he directed Wright to do.

Endrizzi testified credibly at the hearing that she did not receive Noak's file documents from Broschart, in July of 2005, or at any time prior to 2007.  Furthermore, Carrick, CFORDTF's office manager, testified credibly that in 2005, pursuant to the law firm's mail-distribution procedures, mail pertinent to this case, even if addressed to Endrizzi, would have been directed to Schnepp.  Schnepp did not testify at the hearing.

The Court finds, based on the credible evidence in the record, that Endrizzi did not misrepresent to the Court when she received Rafter's sealed New York Police Department records.  The Court finds, further, that Endrizzi did not: (i) engage in bad faith conduct, to delay the litigation; or (ii) multiply the proceedings unreasonably and vexatiously.  Therefore, sanctioning her under the Court's inherent power or 28 U.S.C. § 1927, would be inappropriate.

## CONCLUSION

For the reasons set forth above, the plaintiff's request that the Court sanction the

defendants' counsel is denied.

Dated: New York, New York                    SO ORDERED:
       June 28, 2011

                                             *Kevin Nathaniel Fox*
                                             KEVIN NATHANIEL FOX
                                             UNITED STATES MAGISTRATE JUDGE

Mailed copies to:

Marcia Rafter
Laura A. Endrizzi, Esq.
Rachel Seligman Weiss, Esq.

14